## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| BROADCAST MUSIC, INC., *et al.,*<br><br>                    Plaintiffs,<br><br>          v.<br><br>3817 PACIFIC LLC d/b/a CATTLE 'N CLOVER and JOHN SHEPPARD,<br><br>                    Defendants. | Case No. 23-cv-22782 (RMB/AMD)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiffs Broadcast Music, Inc. ("**BMI**"), Stone Diamond Music Corp., Hydroponic Music, Sony/ATV Songs LLC, the Bernard Edwards Company LLC, and Mow B'Jow Music Inc. (collectively, "**Plaintiffs**") ask this Court to enter default judgment against Defendants 3817 Pacific LLC d/b/a Cattle 'N Clover and John Sheppard (collectively, "**Defendants**"). Plaintiffs claim that Defendants violated the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.* (the "**Copyright Act**"), by publicly performing musical compositions from the BMI repertoire without authorization, despite BMI's repeated efforts to inform Defendants of their legal obligations under the Copyright Act. Because Defendants have failed to answer or otherwise defend this action, and because Plaintiffs have shown that default judgment is warranted, the Court will **GRANT** Plaintiffs' Motion for Default Judgment.

1

I.     BACKGROUND

BMI is a "performing rights society" that licenses the right to publicly perform a repertoire of almost 20.6 million copyrighted musical compositions on behalf of copyright owners.  [Compl. ¶ 3, Docket No. 1.]  A "performing rights society" is an "association, corporation, or other entity that licenses the public performance of nondramatic musical works on behalf of copyright owners of such works, such as . . . Broadcast Music, Inc. (BMI)."  17 U.S.C. § 101.  BMI acquires these rights through agreements with copyright holders and then grants to music users (e.g., the owners and operators of music halls, clubs, and restaurants) the rights to publicly perform any of the works in its repertoire through "blanket license agreements."  [Poulos Moore Decl. ¶ 2, Docket No. 8-2.]

Defendants own and operate a bar and steakhouse called Cattle 'N Clover (the "**Establishment**"), located at 3817 Pacific Avenue, Wildwood, New Jersey 08260. [Compl. ¶ 10.]  They regularly offer live and recorded music at the Establishment. [*See id.* ¶ 11 (describing that the Establishment "publicly performs musical compositions and/or causes musical compositions to be publicly performed").]

On April 10, 2019, a BMI licensing representative sent an email to advise Defendants that a license was required to publicly perform copyrighted music from the BMI repertoire at the Establishment.  [Flynn Decl. ¶ 3, Docket No. 8-3; Apr. 2019 E-mail, Flynn Decl. Ex. B, Docket No. 8-5.]  Between April 2019 and September 2023, BMI called the Establishment on twenty-four (24) occasions and sent approximately twenty-two (22) letters and e-mails, first advising Defendants of the license

requirement and then instructing Defendants to cease public performances of copyrighted music from the BMI repertoire.  [Flynn Decl. ¶¶ 4–7; *see generally* Flynn Decl. Ex. B (containing copies of outgoing correspondence).]  During this time, Defendants did not enter into a license agreement with BMI, and they continued to publicly perform the copyrighted works at issue.  [Flynn Decl. ¶ 8; *accord* Compl. ¶ 22.] Had Defendants entered into a license agreement, the estimated fees between April 2019 and February 22, 2024 (the date Plaintiffs' Motion for Default Judgment was filed) would have been approximately $15,550.  [Flynn Decl. ¶ 15.]  The annual licensing fee as of February 2024 was $3,325.  [*Id.*]

On July 14, 2023, BMI sent a music researcher to produce an audio recording and written report of the music being publicly performed at the Establishment.  [Flynn Decl. ¶ 9.]  The materials were submitted to a BMI performance identification employee, who confirmed that the five (5) copyrighted musical compositions at issue were performed.  [*Id.* ¶ 10; *see* Compl. ¶ 22 & Schedule (noting that the musical compositions were publicly performed without authorization on July 14, 2023); *see generally* Flynn Decl. Ex. A, Docket No. 8-4 (containing certified infringement report).] On August 1, 2023, BMI informed Defendants of the investigation by letter, copies of which were sent by FedEx and first-class mail.  [Flynn Decl. ¶ 11].  Plaintiffs commenced this action shortly thereafter.  [*See* Docket (Compl. filed Nov. 30, 2023).]

Service of the Summons was made upon Defendants on December 19, 2023. [Docket Nos. 5, 6.]  The time for Defendants' response expired on January 9, 2024. Defendants have not since answered the Complaint.  [*See id.*]  On February 15, 2024,

Plaintiffs requested an entry of default, [Docket No. 7], which the Clerk entered on February 20, 2024, [*see* Docket].  Plaintiffs filed the instant motion on February 22, 2024, [Mot. Default J., Docket No. 8], and properly served it upon Defendants via first-class mail at Defendant Sheppard's registered address, [Cert. Service, Docket No. 8-7].  Defendants have not opposed or otherwise responded or appeared in this litigation.  [*See generally* Docket.]

Plaintiffs request that default judgment be entered against Defendants.  [Mot. Default J., Docket No. 8.]  As part of their request, Plaintiff seek an order: (i) requiring Defendants to pay statutory damages in the amount of $34,500, pursuant to 17 U.S.C. § 504(c); (ii) enjoining Defendants and anyone acting under their authority or with their permission from infringing any copyrighted musical compositions licensed by BMI, pursuant to 17 U.S.C. § 502; (iii) requiring Defendants to pay Plaintiffs' attorneys' fees and costs, pursuant to 17 U.S.C. § 505; and (iv) providing for postjudgment interest pursuant to 28 U.S.C. § 1961.  [*Id.*]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides that the Clerk of the Court shall enter a party's default when a party has "failed to plead or otherwise defend" an action. Fed. R. Civ. P. 55(a).  After a default has been entered, a plaintiff may move for default judgment.  Fed. R. Civ. P. 55(b).  A plaintiff is not entitled to default judgment as of right.  *See Franklin v. Nat'l Mar. Union of Am.*, 1991 WL 131182 (D.N.J. July 16, 1991) (citing 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), *aff'd*, 972 F.2d 1331 (3d Cir. 1992).  Rather, the decision to enter default judgment under

Rule 55(b)(2) is left to the sound discretion of the district court. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). The Court is mindful that "cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984).

Before granting default judgment, a court must consider a number of issues: (1) whether it has subject matter jurisdiction over the claims at issue and personal jurisdiction over the defendant, (2) whether the defendant is exempt from entry of default judgment, (3) whether there is sufficient proof of service, (4) whether a sufficient cause of action has been stated, and (5) whether default judgment is otherwise proper. *Trustees of N.J. B.A.C. Health Fund v. Thurston F. Rhodes, Inc.*, 2017 WL 3420912, at *2 (D.N.J. Aug. 9, 2017) (citation omitted); *Laborers Int'l Union of N. Am. Local No. 199 Welfare, Pension, Apprenticeship & Training Annuity v. RAMCO Sols.*, 2013 WL 4517935, at *2–3 (D.N.J. Aug. 26, 2013) (hereinafter, "**LIUNA**"); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535–36 (D.N.J. 2008). The propriety of default judgment depends on: (1) whether the plaintiff will be prejudiced if default judgment is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay is the result of culpable misconduct. *Butler v. Pa. Bd. of Prob. & Parole*, 613 F. App'x 119, 122 (3d Cir. 2015) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)). Although a court should accept the facts pled in the complaint as true when deciding the motion, the plaintiff bears the burden of proving damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

## III.   DISCUSSION

### A.   Jurisdiction.

The Court first considers whether it has subject matter jurisdiction over this action.   "Verifying the Court's jurisdiction is of particular concern where . . . the defaulting party has failed to make any sort of appearance or submit any responsive communication to the Court."   *LIUNA*, 2013 WL 4517935, at *2.   Here, Plaintiffs allege that Defendants violated the Copyright Act, 17 U.S.C. § 101, *et seq.*   [*See generally* Compl., Docket No. 1.]   The Court therefore properly exercises federal question jurisdiction under the Copyright Act, a federal statute.   *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights."); *see also* 28 U.S.C. § 1331.

The Court next considers whether it has personal jurisdiction over the defaulting Defendants.   *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 259 (3d Cir. 2008) (stating that if a court does not have personal jurisdiction, the entry of a default judgment is "not merely erroneous; it never should have been entered in the first place").   The basic principles of due process dictate that a defendant "may be subject to suit . . . only if he has 'certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"   *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)).   These principles are reflected in

6

general jurisdiction and specific jurisdiction, either of which courts may exercise over a defendant. *O'Connor v. Sandy Lane Hotel Co., LTD*, 496 F.3d 312, 317 (3d Cir. 2007).

A defendant is subject to general jurisdiction when his "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919). The paradigmatic forum for the exercise of general jurisdiction over a corporation is its place of incorporation and principal place of business, *id.* at 137, and for an individual, the person's place of domicile, *Ripp*, 49 F.4th at 257 (citing *Goodyear*, 564 U.S. at 924). "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) ("The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" (citation omitted)).

Here, the Court can exercise personal jurisdiction over both Defendants. Defendant 3817 Pacific LLC operates, maintains, and controls the Establishment, which is located in Wildwood, New Jersey. [Compl. ¶ 10.] Accordingly, because its activities are so "continuous and systematic" as to render it at home in the State of New Jersey, the Court can exercise general jurisdiction over Defendant 3817 Pacific LLC. *See Daimler*, 571 U.S. at 137. Defendant John Sheppard is a member of Defendant 3817 Pacific LLC and responsible for the operation and management of the Establishment. Though the Court has not been furnished with allegations concerning Defendant Sheppard's state of domicile, the Court concludes that his conduct is

purposefully directed towards the State of New Jersey. Accordingly, the Court can exercise specific jurisdiction over him. *See Marten*, 499 F.3d at 269.

### B. Service.

Next, the Court considers whether Defendants were adequately served with process. *See Carruth v. Pennsylvania*, 779 F. App'x 993, 995 (3d Cir. 2019) ("A default judgment may not be entered without proper service." (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1304 (3d Cir. 1995)); *see also Thurston F. Rhodes, Inc.*, 2017 WL 3420912, at *2.

Here, Defendants were properly served with process. Pursuant to Federal Rule of Civil Procedure 4(e), Defendants were served with copies of the Summons and Complaint on December 19, 2023, at Defendant Sheppard's registered address. [Docket Nos. 5, 6.] The process server left a copy of these documents with Defendant Sheppard's sister, a competent household member of suitable age and discretion. [*See id.*] To date, no responsive pleading has been filed, [*see generally* Docket], and Plaintiffs properly sought entry of default pursuant to Rule 55(a) on February 15, 2024, [Docket No. 7]. The Clerk entered default on February 20, 2024. [*See generally* Docket.] Plaintiffs filed the instant motion on February 22, 2024, [Mot. Default J., Docket No. 8], and again served Defendants, this time via first-class mail at the same registered address, [Cert. Service, Docket No. 8-7]. The Court finds that Defendants were properly served with the Complaint and Summons, *see, e.g.*, *Malibu Media, LLC v. Ramiscal*, 2016 WL 8698533, at *3 (D.N.J. Feb. 19, 2016) (finding service at

defendant's residence to be sufficient in copyright infringement dispute); *United States v. Floyd*, 2015 WL 5771137, at *2 (D.N.J. Sept. 30, 2015) (noting that New Jersey Court Rule 4:4-4(a)(1) permits a defendant to be served by delivering a copy of the summons and complaint to the individual's dwelling place or usual place of abode with a person, at least fourteen years old, who resides there), and with the Motion for Default Judgment, *see, e.g.*, *Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Moskowitz Motor Transp., Inc.*, 2007 WL 608436, at *2 (D.N.J. Feb. 23, 2007) (finding that defendant had ample notice of motion for default judgment where plaintiff sent it with its supporting documentation via first-class mail, even though notice of the motion was not required to seek default judgment); *Ali v. Jenkins*, 2023 WL 8437230, at *1 & n.3 (D.N.J. Dec. 5, 2023) (finding that defendant was personally served with complaint and summons at residence by *pro bono* counsel and observing that motion for default judgment was sent via first-class mail to same address).

## C.    Cause of Action.

Next, the Court considers whether Plaintiffs have stated a proper cause of action against Defendants.  In doing so, the Court accepts as true the Complaint's well-pled factual allegations while disregarding any legal conclusions.  *See LIUNA*, 2013 WL 4517935, at *3; *Comdyne I*, 908 F.2d at 1149.  To establish copyright infringement under the Copyright Act, a plaintiff must demonstrate "ownership of a valid copyright" and "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Dun & Bradstreet*

*Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002).  "Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, including the rights to distribute and reproduce copyrighted material."  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) (citation and internal quotation marks omitted).

With respect to a claim for copyright infringement based on unauthorized public performance of a musical composition, a plaintiff must demonstrate the following elements: "(1) originality and authorship of the composition; (2) compliance with the formalities of the Copyright Act; (3) proprietary rights in the work involved; (4) public performance of the composition involved for profit; and (5) lack of authorization for public performance."  *Broad. Music Inc. v. Hemingway's Café, Inc.*, 2017 WL 2804951, at *3 (D.N.J. Aug. 28, 2017); *see also Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 191 (S.D.N.Y. 2016).

Here, the first three elements of copyright infringement are clearly satisfied.  Plaintiffs have identified the five musical compositions at issue in this litigation (i.e., "Ain't Too Proud to Beg," "All Mixed Up," "I Can't Help Myself a/k/a Sugar Pie, Honey Bunch," "I'm Coming Out," and "Two Princes").  [See Compl. at Schedule.]  Plaintiffs have also identified the authors and publishers of these musical compositions, referenced their copyright registrations by number and date, and alleged that the publishers received certificates of registration for each of the musical compositions.  [*Id.* ¶¶ 3–9, 18–20, & Schedule; *see also* Moore Decl. ¶ 3.]  As a result, Plaintiffs have established the originality and authorship of the musical compositions

10

and compliance with the formalities of the Copyright Act (i.e., registration of the works with the Copyright Office). *See Hemingway's Café*, 2017 WL 2804951, at *3; *Broad. Music, Inc. v. Publick House Partners, LLC*, 2015 WL 3396804, at *2 (D.N.J. May 26, 2015); *Broad. Music, Inc. v. Kujo Long, LLC*, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014).

Furthermore, Plaintiffs have alleged (and submitted evidence to establish) that BMI acquired non-exclusive public performance rights to the copyrighted musical compositions. [*See* Compl. ¶ 21; Moore Decl. ¶ 2.]  Through the acquisition of such rights, BMI can grant the right to publicly perform works in its repertoire by means of a "blanket license agreement" to end users, such as the owners and operators of bars and restaurants. [*See* Moore Decl. ¶ 2.]  These allegations demonstrate the third element of copyright infringement—that BMI has the relevant proprietary rights in the copyrighted musical compositions—as an assignee of the copyright owners. *Cf. Broad. Music, Inc v. 84–88 Broadway, Inc.*, 942 F. Supp. 225, 229 (D.N.J. 1996) (explaining that where the plaintiff is not an author with a copyright registration certificate, but an assignee of the copyright owner, plaintiff can show that it has proprietary rights in the compositions with an uncontroverted affidavit).  Since Defendants have failed to respond, the Court may presume the truth of BMI's assertion that it has the right to authorize end users to publicly perform the musical compositions at issue here. *See Comdyne I*, 908 F.2d at 1149 (explaining that "[a] consequence of the entry of a default judgment is that the factual allegations of the complaint . . . will be taken as true") (citation and internal quotation marks omitted).

11

The fourth element of copyright infringement is also satisfied.  A plaintiff can establish that a public performance occurred by introducing a certified report that an investigator compiles after visiting the allegedly infringing establishment.  *Broad. Music, Inc. v. Larkin*, 672 F. Supp. 531, 533–34 (D. Me. 1987); *see also Broad. Music, Inc. v. Miller Assocs., Inc.*, 2006 WL 3064107, at *4 (W.D. Pa. Oct. 25, 2006).  Here, Plaintiffs allege that Defendants publicly performed each of the musical compositions at the Establishment on specified dates, [Compl. ¶ 22 & Schedule], and they submit a certified infringement report in support of their motion, [see Certified Infringement Report, Flynn Decl. Ex. A, Docket No. 8-4].  The Certified Infringement Report and its corresponding certifications and declarations demonstrate that the musical compositions were in fact publicly performed.  As a result, the Court may infer that the public performance was likely for profit.  *See 84–88 Broadway*, 942 F. Supp. at 230 ("[I]n the absence of . . . evidence [of profit], a court may infer that a defendant derived some pecuniary benefit from the public performance."); *see also Larkin*, 672 F. Supp. at 533–534 (same).

Finally, Plaintiffs have established the fifth element of copyright infringement.  As Plaintiffs allege, Defendants never received authorization to publicly perform the musical compositions from BMI's repertoire.  [*See* Compl. ¶¶ 17, 23.]  Moreover, according to the Flynn Declaration, Defendants never entered into a license agreement with BMI despite consistent communications explaining "the need to obtain permission from copyright owners in order to lawfully publicly perform copyrighted music in their establishment."  [Flynn Decl. ¶ 2; *see also id.* ¶ 8.]  For instance, BMI

licensing personnel "telephoned on twenty-four (24) occasions and on a number of those occasions spoke to persons associated with the establishment's operation." [*Id.* ¶ 7.]  Also, as noted above, BMI conducted an infringement investigation of the Establishment and sent letters to Defendants advising of the investigation.  [*Id.* ¶¶ 9–11.]  But Defendants ignored them.  Based on these allegations, as supplemented by the Flynn Declaration, Plaintiffs have established that Defendants lacked authorization to publicly perform the musical compositions.  *See Miller Assocs., Inc.*, 2006 WL 3064107, at *4.

### D.    Propriety of Default Judgment.

Since the Complaint demonstrates a valid cause of cation, the Court next assesses whether Plaintiffs are entitled to default judgement.  The Court must first consider prejudice to Plaintiffs if the Motion for Default Judgment were not granted.  *See Butler*, 613 F. App'x at 122 (citing *Chamberlain*, 210 F.3d at 164).  By failing to respond to Plaintiffs' Complaint or oppose the Motion for Default Judgment, Defendants have deprived Plaintiffs of the opportunity to litigate their claims.  *See Keystone Ins. Co. v. Anderson*, 2022 WL 2235882, at *3 (D.N.J. June 22, 2022).  Therefore, the Court finds that Plaintiffs would be prejudiced if the Motion for Default Judgment were not granted.

The Court next addresses whether Defendants have a litigable defense.  *See Butler*, 613 F. App'x at 122 (citing *Chamberlain*, 210 F.3d at 164).  Because Defendants have failed to oppose the Motion for Default Judgment, the Court is "not in a position

13

to determine whether [Defendants have] any meritorious defense." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Rock Canyon, Inc.*, 2015 WL 881694, at *1 (D.N.J. Mar. 2, 2015) (citation and internal quotation marks omitted); *see also N.J. Bldg. Laborers' Statewide Pension Fund & Trs. Thereof v. Pulaski Constr.*, 2014 WL 793563, at *3 (D.N.J. Feb. 26, 2014) ("The Court has no duty to construct a defense for Defendant."). "The Court therefore finds that Defendants have no meritorious defense." *Coach, Inc. v. Fashion Paradise, LLC*, 2012 WL 194092, at *6 (D.N.J. Jan. 20, 2012).

Finally, the Court considers whether Defendants' delay is the result of culpable misconduct. *See Butler*, 613 F. App'x at 122 (citing *Chamberlain*, 210 F.3d at 164). "Culpable conduct is dilatory behavior that is willful or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983). Here, Defendants were properly served. There is no evidence to suggest they have an excusable reason for their complete failure to respond. As a result, Defendants' failure to respond permits the Court to draw the adverse inference that Defendants are culpable. *See Fed. Ins. Co. v. Secure Cargo Corp.*, 2013 WL 1222653, at *3 (D.N.J. Mar. 25, 2013) (citing *Surdi v. Prudential Ins. Co. of Am.*, 2008 WL 4280081, at *2 (D.N.J. Sept. 8, 2008)); *Coach, Inc.*, 2012 WL 194092, at *6 (citing *Platypus Wear v. Bad Boy Club, Inc.*, 2009 WL 2147843, at *5 (D.N.J. July 15, 2009)). Therefore, the Court finds that default judgment is appropriate.

### E.    Relief.

The Court must next determine what relief is warranted, having found that Plaintiffs are entitled to default judgment.  Plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c), an injunction pursuant to 17 U.S.C. § 502, attorneys' fees and costs pursuant to 17 U.S.C. § 505, and interest pursuant to 28 U.S.C. § 1961.

### 1.    Statutory Damages.

Under the Copyright Act, a plaintiff that establishes infringement of its copyrighted musical compositions may seek an award of statutory damages "in a sum of not less than $750 or more than $30,000" per infringement.  17 U.S.C. § 504(c)(1). Courts have discretion to determine the appropriate level of damages between the statutory minimum and maximum, where the amount need not account for the unprofitability of the infringement.  *Miller Assocs., Inc.*, 2006 WL 3064107, at *7 (citations omitted); *F.W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 233 (1952). When determining the appropriate level of statutory damages, the Court considers: "(1) expenses saved and profits reaped by the infringer; (2) revenues lost by the plaintiff; (3) the strong public interest in insuring [sic] the integrity of the copyright laws; and (4) whether the infringement was willful and knowing or innocent and accidental."  *Hemingway's Café*, 2017 WL 2804951, at *7 (citing *Microsoft Corp. v. Gonzales*, 2007 WL 2066363, at *6 (D.N.J. July 13, 2007)).

Statutory damages both "compensate the plaintiff for the infringement of its copyright" and "deter future infringements by punishing the defendant for its actions," thereby serving two purposes. *Microsoft Corp.*, 2007 WL 2066363, at *6 (citing *Schiffer*

*Publ'g, Ltd. v. Chron. Books, LLC*, 2005 WL 67077, at *8 (E.D. Pa. Jan. 11, 2005)). Hence, "courts throughout the Third Circuit commonly award statutory damages to a plaintiff in amounts between two to five times the amount that a defendant would have paid in licensing fees." *Hemingway's Café*, 2017 WL 2804951, at *7; *see also Publick House Partners*, 2015 WL 3396804, at *3; *Broad. Music, Inc. v. Amici III, Inc.*, 2014 WL 7271915, at *1 (D.N.J. Dec. 16, 2014); *Broad. Music, Inc. v. Shane's Flight Deck, Ltd.*, 210 WL 4916208, at *1 n.2 (M.D. Pa. Nov. 24, 2010); *Broad. Music, Inc. v. It's Amore Corp.*, 2009 WL 1886038, at *8 (M.D. Pa. June 30, 2009); *Broad. Music, Inc. v. DeGallo, Inc.*, 872 F. Supp. 167, 169 (D.N.J. 1995). Even where a plaintiff does not seek a willfulness enhancement, as Plaintiffs here do, courts weigh the intent of the infringement when deciding the extent of the penalty to impose. *Microsoft Corp.*, 2007 WL 2066363, at *6.

In this case, Plaintiffs have made numerous attempts—including twenty-four (24) phone calls and twenty-two (22) letters and e-mails—to advise Defendants of the license requirement and instruct Defendants to cease public performance of the copyrighted music. [Flynn Decl. ¶¶ 3–9; *see, e.g.,* Sept. 19, 2019, Letter, Flynn Decl. Ex. B, Docket No. 8-5 (instructing Defendant Sheppard to "immediately cease all use of BMI licensed music" at the Establishment, noting that Defendant had not "responded to BMI's correspondence [or] . . . secured a BMI license agreement").] Defendants ignored these communications. [*See* Flynn Decl. ¶¶ 3–5, 8.] Because Defendants continued to publicly perform BMI-licensed music over BMI's objection,

16

the Court considers Defendants' infringement to have been willful.  *See Hemingway's Café*, 2017 WL 2804951, at *8.  Plaintiffs request an award of statutory damages of $6,900 for each of the five works infringed, for a total of $34,500—approximately three times the amount Defendants would have paid in licensing fees to BMI, had they obtained a license when BMI first made contact.[1]  The Court concludes that damages in this amount are fairly awarded and sufficient to communicate that Defendants cannot ignore Plaintiffs' statutory rights with impunity.  *See DeGallo, Inc.*, 872 F. Supp. at 170.

### 2.    Injunctive Relief.

A court may grant an injunction upon a finding of copyright infringement "to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  A plaintiff that seeks a permanent injunction must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public

---

[1] Had Defendants entered into a license agreement with BMI in April 2019 (when BMI first contacted them) and paid the annual license fee through February 22, 2024 (the date the Motion for Default Judgment was filed), their licensing costs would have been approximately $15,550.  [Flynn Decl. ¶ 15.]  Recognizing the disastrous effects of the COVID-19 pandemic and the restrictions imposed on New Jersey establishments like Cattle 'N Clover, Plaintiffs base their damages request on a reduced period of 43, rather than 58, months.  [Pls.' Br. at 8 n.1.]  Accordingly, they argue that Defendants would have paid $11,500 in fees had they entered into a licensing agreement.  [*Id.*]  The Court adopts this lower figure in calculating statutory damages.

interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

While a prima facie case for copyright infringement does not alone satisfy the first two factors, a plaintiff may demonstrate irreparability of injury and inadequacy of remedies at law where it can show "a threat of future infringement beyond mere conclusory allegations." *Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754, 769 (D.N.J. 2018) (citation and internal quotation marks omitted) (collecting cases). Here, Defendants continued to publicly perform BMI-licensed music without authorization, despite receiving over forty notices of infringements. [Flynn Decl. ¶ 8; Compl. ¶¶ 16, 23.] Defendants' willful disregard of Plaintiffs' copyrights demonstrates that an injunction is warranted. *Miller Assocs., Inc.*, 2006 WL 3064107, at *6–7 ("Where an establishment continues to provide unauthorized performances of copyrighted musical compositions, despite receiving notice of infringement and demands to cease such infringement, it displays a 'willful disregard' of copyrights and should be permanently enjoined." (quoting *Broad. Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 963 (N.D. Ill. 1985)). Should the Court not issue an injunction, Plaintiffs would likely continue to suffer the same injury that gave rise to the claims asserted here. Enjoining Defendants restrains them from infringing Plaintiffs' copyrights any further. *See Amici III, Inc.*, 2014 WL 7271915, at *2 (recognizing that a remedy in equity is warranted where the only hardship imposed on the defendant is paying to license copyrighted materials or refraining from the use of such materials). Finally, the Third Circuit has long recognized the public interest in copyright protection. *Id*.

18

Accordingly, because each of the elements under *eBay* weighs in favor of Plaintiffs, the Court will enjoin Defendants from using the BMI-licensed musical compositions without authorization.

### 3.   Attorneys' Fees and Costs.

Additionally, a court may "allow the recovery of full costs by or against any party" and "award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.  "Circumstances warranting an award of attorney's fees to a plaintiff include the defendant's deliberate infringement and the need for compensation to a party for defending or enforcing its copyrights."  *Yash Raj Films (USA), Inc. v. Rannade Corp.*, 2007 WL 1456193, at *12 (D.N.J. May 17, 2007).  The burden of establishing the reasonableness of the fees sought lies on the party seeking the award.  *Id*.  The Court will award Plaintiffs costs and reasonable attorney's fees, but Plaintiffs must first submit evidence of the time spent on this case, counsel's hourly rate, and Plaintiffs' related costs and expenses incurred in litigating the matter.  An appropriate order will be entered.

### 4.   Interest.

Finally, the Court will award interest pursuant to 28 U.S.C. § 1961.  *See Freedom Mortg. Corp. v. Loancare, LLC*, 2024 WL 3226942, at *8 (D.N.J. June 27, 2024) (explaining that post-judgment interest is mandatory under 28 U.S.C. § 1961) (citing *Dunn v. HOVIC*, 13 F.3d 58, 60 (3d Cir. 1993)).

## IV.   CONCLUSION

For the foregoing reasons, the Motion for Default Judgment will be **GRANTED**.  A final judgment by default shall issue separately.

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge

<u>**Dated**</u>: July 18, 2024

20